FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

'15 JUL 28 P 4: 21

JAMES JENKINS,                          :
NATASHA THOMAS,                         :          CLERK U.S. DISTRICT COURT
KEITH BOHANNON,                         :             RICHMOND, VA
HAMPTON BROWN,                          :
RACHEL SIMMS,                           :          Civil Action No.
CONNIE VOSS,                            :
CAROLYN CLARK,                          :
JAMES NEILL, and                        :          3:15CV443
NATHANIEL LEWIS                         :
*on behalf of themselves*               :
*and all other similarly situated individuals*   :
                                        :
      Plaintiffs,                       :
                                        :
v.                                      :
                                        :
                                        :
EQUIFAX INFORMATION SERVICES, LLC       :
                                        :
SERVE:      Corporation Service Company :
            Bank of America Center, 16th Floor  :
            1111 East Main Street       :
            Richmond, VA 23219          :
                                        :
            Defendant.                  :

## CLASS ACTION COMPLAINT

COME NOW the Plaintiffs, Natasha Thomas, Keith Bohannon, Hampton Brown, Tyrone

Henderson, Rachel Simms, Connie Voss, Carolyn Clark, James Jenkins, James Neill, and

Nathaniel Lewis, on behalf of themselves and all other similarly situated individuals, by counsel,

and as for their Complaint against the Defendant, they state as follows:

## PRELIMINARY STATEMENT

1.      The Plaintiffs bring this class action against the Defendant to obtain relief for

themselves and the class they propose to represent for the Defendant's violations of the Fair

Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*

2.     Defendant is a FCRA-governed "consumer reporting agency" that selectively decides which information to provide to consumers that request the FCRA-governed information in the Defendant's possession and which information it will hide from consumers. It withholds certain information in order to minimize their compliance costs and to avoid customer service inquiries directed at them and their business partners.   These business partners include LexisNexis, a third party that sells public record information to Equifax and then, in turn, processes disputes regarding that public record information via the "ACDV" system.

3.     Defendant systemically misrepresents to consumers the source of the public record information (such as civil judgments, tax liens and bankruptcies) that it places on their consumer reports, in violation of 15 U.S.C. § 1681g(a)(2).  Defendant thus deprives consumers of valuable congressionally-mandated information and makes it more difficult for consumers, such as Plaintiffs, to correct errors relating to these public records that are caused by Defendant and/or its private vendor sources, but not by any courthouse or other government body that Defendant often misidentify as its "source."

4.     The Defendant never identifies LexisNexis as the source of the public record information that makes its way into the consumer credit files that it sells, or any of the other less publicized marketing or risk assessment databases that they maintain, including The Work Number.

5.     Plaintiffs allege a class-claim under 15 U.S.C. § 1681g(a)(2). The Plaintiffs each requested a full copy of their credit files from the Defendant. When the Defendant responded to the Plaintiffs, it violated 15 U.S.C. § 1681g because it misrepresented the source of the public record information contained in the disclosure.

2

6.     Within this class, the Defendant's failure to comply with the FCRA took two different forms, brought as separate subclasses.

7.     In most instances, upon direct request from a consumer, the Defendant will falsely state that the various courthouses are the source of the public record information, thus hiding the identity of LexisNexis as the furnisher that provided this information.

8.     However, for consumers that request their FCRA-mandated free credit report each year through the "annualcreditreport.com" website, the Defendant also, remarkably, also hides *even the name of the courthouse* from the consumer.

## JURISDICTION

9.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p). Venue is proper in this Court under 28 U.S.C. § 1391(b) as the Defendant regularly conducts business in this district and division.

## PARTIES

10.     Plaintiffs are each natural persons residing in Virginia, and at all times relevant to the Complaint were each a "consumer" as defined by 15 U.S.C. §1681a(c).

11.     Defendant Equifax Information Services, LLC ("Equifax") is a foreign limited liability company doing business in Virginia. At all times relevant hereto, it was a "credit reporting agency" as defined by the FCRA at 15 U.S.C. §1681(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d), to third parties.

## FACTS

### DEFENDANT FAILS TO DISCLOSE THE TRUE SOURCE OF THE
### PUBLIC INFORMATION IT GATHERS AND REPORTS ABOUT CONSUMERS

12.    For several years, even within traditional credit files that the Defendant acknowledges are FCRA governed, Defendant has obtained its information about bankruptcies, civil judgments, and tax liens (*i.e.,* "public records" information) from other private businesses it calls "vendors."

13.    Equifax has not retrieved actual public records from courthouses or actual government offices for many years.

14.    Nevertheless, on its credit reports that it provides to consumers, and which it calls "personal credit reports," Equifax falsely still lists the names and addresses of courthouses or other government offices as the true "source" of its public records information.

15.    The public records information that Defendant receives from its vendors is not the actual court or taxing authority records. Rather it is a distilled version of those records, which does not include all of the information available at the actual courthouses or government offices where the true records are housed.

16.    Defendant knows that both it and its public records vendors make mistakes in the distilled public records information that is acquired for purposes of credit reporting.

17.    These distilled records frequently have numerical and other factual errors, do not contain the most updated status of the public records, invert the debtor and creditor, and/or are placed upon the wrong consumer's report.

18.    Indeed, Equifax receives hundreds, if not thousands, of consumer disputes per month about public records items being misreported on personal credit reports.

4

19.     Further, the FCRA unambiguously requires credit-reporting agencies, such as Equifax, to "clearly and accurately disclose to the consumer" who requests his or her credit file "the sources" that supplied any "information" to the credit-reporting agency about that consumer.  15 U.S.C. § 1681g(a)(2).

20.     Disclosure of the true source of a credit-reporting agency's information is vital so that certain credit reporting errors that originate at the source can be corrected, and so that consumers always know who is furnishing important credit information about them.

21.     Nevertheless, and despite the clear mandate of FCRA section 1681g(a)(2), Equifax never discloses to consumers the true source of the public records information that it collects and reports about them.

22.     Equifax conceals that its sources for public record information are private vendors that supply to it only incomplete information, which can often be inaccurate or not up to date.

23.     In this regard, Equifax is more interested in maintaining the appearance that it receives actual public records from true government sources and in protecting its low-cost private sources of public record data than in disclosing to consumers vital information that Congress required credit-reporting agencies to disclose in FCRA section 1681g(a)(2).  Its true goal is to minimize the number of disputes directed to it and to its vendors, as responding to such inquiries from a compliance standpoint is entirely a liability to Equifax and its business partners and creates no profit potential.

### PLAINTIFF JENKINS REQUESTS A COPY OF HIS EQUIFAX FILE

24.     In approximately November 2013, Plaintiff Jenkins requested a full copy of his file from the Defendant via www.annualcreditreport.com.

25.     On or around November 18, 2013, in response to Plaintiff Jenkins's request, Equifax provided and furnished to Mr. Jenkins his conventional credit report.

26.     Plaintiff Jenkins's November 18, 2013 credit report stated that he had allegedly filed bankruptcy in Chicago, IL.

27.     Equifax represented that its source for this public record was "219 Dearborn St., Chicago, IL 60604."

28.     Equifax did not obtain any bankruptcy information about Plaintiff Jenkins or about any consumer from "219 Dearborn St., Chicago, IL 60604."

29.     This consumer disclosure from annualcreditreport.com also did not list the name of the courthouse from which the information was obtained.

30.     Equifax obtained this bankruptcy information about Plaintiff Jenkins from one of its private "vendors", including LexisNexis, and failed to disclose this to the Plaintiff.

31.     Notwithstanding the FCRA's requirements, Equifax deprived Plaintiff Jenkins of this valuable information despite the requirements of the FCRA and according to its standard practice and procedure.

## PLAINTIFF THOMAS REQUESTS A COPY OF HER EQUIFAX FILE

32.     On multiple dates during 2013 and 2014, Plaintiff Thomas requested a full copy of her file from the Defendant.

33.     In their responses to Plaintiff Thomas's requests, Equifax provided and furnished to Ms. Thomas her conventional credit report.

34.     On or about February 10, 2014, in response to a request from Plaintiff Thomas, Equifax provided her with a "Credit File." Additionally, this credit file stated that Plaintiff Thomas allegedly had a civil judgment entered against her in the amount of "$10,037."

35.     Equifax represented that its source for this public record was "Portsmouth Civil Court, Portsmouth VA 23700."

36.     Equifax did not obtain any civil judgment information about Plaintiff Thomas or about any consumer from "Portsmouth Civil Court, Portsmouth VA 23700."

37.     Rather, Equifax obtained this civil judgment information about Plaintiff Thomas from one of its private "vendors", including LexisNexis.

38.     The information about this supposed $10,037 civil judgment was incredibly inaccurate.  The civil judgment resulted from residential lease payments which were allegedly past due, in the amount of $1,037.  As a result of fees and other damages alleged, the civil judgment actually entered was for $1,489.

39.     Official court records for the General District Court for the City of Portsmouth, VA reflect that the amount of rent demanded was "$1,037," not "$10,037," and that the civil judgment entered was for $1,489.

40.     Based upon information and belief, this transcription error (listing the $1,489 civil judgment as a "10,037" judgment) originated with Equifax's public records vendors, and not with the Portsmouth, VA civil court records.

41.     Plaintiff Thomas submitted multiple disputes to Equifax asserting that the "$10,037" civil judgment was inaccurate and asking for a written description of the procedures used to determine the accuracy and completeness of the judgment.

42.     Notwithstanding Plaintiff Thomas's disputes, Equifax failed to conduct a timely and reasonable reinvestigations into Plaintiff Thomas's disputes and continued to report the inaccurate "$10,037" civil judgment without indicating the source from which Equifax obtained

this public record information. Equifax further represented that it had "verified" the "$10,037" judgment.

43. Had Equifax truthfully disclosed to Plaintiff Thomas that the true source of the "10,037" civil judgment was a private public records vendor, Plaintiff Thomas would have had information to try to correct this error directly with the "vendor."

44. Importantly, Plaintiff Thomas would also have known the true source of the error and could try to stop it from being disseminated by the same vendor to other credit-reporting agencies to which it also sells public records information, including Experian and Trans Union.

45. Notwithstanding the FCRA's requirements, Equifax deprived Plaintiff Thomas of this valuable information despite the requirements of the FCRA and according to its standard practice and procedure.

46. As a result of Equifax's practices, Plaintiff Thomas has been denied credit opportunities, and has been informed that the basis for these denials was Equifax's reporting of the "$10,037" civil judgment and has suffered actual damages in the form of harm to credit reputation and credit score, and emotional distress, including humiliation and embarrassment.

## PLAINTIFF BOHANNON REQUESTS A COPY OF HIS EQUIFAX FILE

47. In approximately November 2013, Plaintiff Bohannon requested a full copy of his file from the Defendant.

48. On or around December 19, 2013, in response to Plaintiff Bohannon's request, Equifax provided and furnished to Mr. Bohannon his conventional credit report.

49. Plaintiff Bohannon's December 19, 2013 credit report stated that he allegedly had civil judgments entered against him in the amounts of "$722" and "$1,744."

50. Equifax represented that its source for these public records was "Henrico District Court, Richmond, VA 23273."

51. Equifax did not obtain any civil judgment information about Plaintiff Bohannon or about any consumer from "Henrico District Court, Richmond, VA 23273."

52. Rather, Equifax obtained this civil judgment information about Plaintiff Bohannon from one of its private "vendors", including LexisNexis.

53. Notwithstanding the FCRA's requirements, Equifax deprived Plaintiff Bohannon of this valuable information despite the requirements of the FCRA and according to its standard practice and procedure.

**PLAINTIFF BROWN REQUESTS A COPY OF HIS EQUIFAX FILE**

54. In approximately November 2013, Plaintiff Brown requested a full copy of his file from the Defendant via www.annualcreditreport.com.

55. On or around November 19, 2013, in response to Plaintiff Brown's request, Equifax provided and furnished to Mr. Brown his conventional credit report.

56. Plaintiff Brown's November 19, 2013 credit report stated that he allegedly had a civil judgment entered against him in the amount of "$7,441."

57. Equifax represented that its source for this public record was "P.O. Box 309, Bowling Green, VA 22427."

58. Equifax did not obtain any civil judgment information about Plaintiff Brown or about any consumer from "P.O. Box 309, Bowling Green, VA 22427."

59. This public record entry did not even list the name of the courthouse from which the judgment information was obtained.

60.     Rather, Equifax obtained this civil judgment information about Plaintiff Brown from one of its private "vendors", including LexisNexis.

61.     Notwithstanding the FCRA's requirements, Equifax deprived Plaintiff Brown of this valuable information despite the requirements of the FCRA and according to its standard practice and procedure.

**PLAINTIFF SIMMS REQUESTS A COPY OF HER EQUIFAX FILE**

62.     In approximately February 2014, Plaintiff Simms requested a full copy of her file from the Defendant.

63.     On or around February 25, 2014, in response to Plaintiff Simms's request, Equifax provided and furnished to Ms. Simms her conventional credit report.

64.     Plaintiff Simms's February 25, 2014 credit report stated that she allegedly had a bankruptcy filed in or around June 2004.

65.     Equifax represented that its source for this public record was "Virginia Federal Bankruptcy Court, Richmond, VA 23219."

66.     Equifax did not obtain any bankruptcy information about Plaintiff Simms or about any consumer from "Virginia Federal Bankruptcy Court, Richmond, VA 23219."

67.     Rather, Equifax obtained this bankruptcy information about Plaintiff Simms from one of its private "vendors", including LexisNexis.

68.     Notwithstanding the FCRA's requirements, Equifax deprived Plaintiff Simms of this valuable information despite the requirements of the FCRA and according to its standard practice and procedure.

## PLAINTIFF VOSS REQUESTS A COPY OF HER EQUIFAX FILE

69.     In approximately March 2014, Plaintiff Voss requested a full copy of her file from the Defendant.

70.     On or around April 3, 2014, in response to Plaintiff Voss's request, Equifax provided and furnished to Ms. Voss her conventional credit report.

71.     Plaintiff Voss's April 3, 2014 credit report stated that she allegedly had a civil judgment entered against her in the amount of "$9,130."

72.     Equifax represented that its source for this public record was "Richmond City District Court, Richmond, VA 23219."

73.     Equifax did not obtain any civil judgment information about Plaintiff Voss or about any consumer from "Richmond City District Court, Richmond, VA 23219."

74.     Rather, Equifax obtained this civil judgment information about Plaintiff Voss from one of its private "vendors", including LexisNexis.

75.     Notwithstanding the FCRA's requirements, Equifax deprived Plaintiff Voss of this valuable information despite the requirements of the FCRA and according to its standard practice and procedure.

## PLAINTIFF CLARK REQUESTS A COPY OF HER EQUIFAX FILE

76.     In approximately August 2014, Plaintiff Clark requested a full copy of her file from the Defendant via www.annualcreditreport.com.

77.     On or around August 4, 2014, in response to Plaintiff Clark's request, Equifax provided and furnished to Ms. Clark her conventional credit report.

78.    Plaintiff Clark's August 4, 2014, credit report stated that she allegedly had a civil judgment entered against her in the amount of "$715" and also a bankruptcy filed in Richmond, VA.

79.    Equifax represented that its sources for these public records were "4301 East Parham Road, Richmond, VA 23273" and "701 E. Broad Street, Richmond, VA 23219."

80.    Equifax did not obtain any civil judgment or bankruptcy information about Plaintiff Clark or about any consumer from "4301 East Parham Road, Richmond, VA 23273" or "701 E. Broad Street, Richmond, VA 23219."

81.    Again here, Equifax omitted even the name of the courthouses from these public records entries.

82.    In approximately September 2014, Plaintiff Clark requested a full copy of her file from the Defendant.

83.    On or about September 15, 2014, in response to a request from Plaintiff Clark, Equifax provided her with a traditional non-annualcreditreport.com consumer disclosure which stated that she allegedly had a civil judgment entered against her in the amount of "$715" and a bankruptcy filed in Richmond, VA.

84.    Equifax represented that its source for these public records were "Henrico Co" and "RMD BKRPT."

85.    Equifax did not obtain any civil judgment or bankruptcy information about Plaintiff Clark or about any consumer from "Henrico Co" or "RMD BKRPT."

86.    Rather, Equifax obtained this civil judgment and bankruptcy information about Plaintiff Clark from one of its private "vendors", including LexisNexis.

87.     Notwithstanding the FCRA's requirements, Equifax deprived Plaintiff Clark of this valuable information despite the requirements of the FCRA and according to its standard practice and procedure.

### PLAINTIFF NEILL REQUESTS A COPY OF HIS EQUIFAX FILE

88.     In approximately August 2013, Plaintiff Neill requested a full copy of his file from the Defendant via www.annualcreditreport.com.

89.     On or around August 13, 2013, in response to Plaintiff Neill's request, Equifax provided and furnished to Mr. Neill his conventional credit report.

90.     Plaintiff Neill's August 13, 2013 credit report stated that he allegedly had a civil judgment entered against him in the amount of "$9,349" and a tax lien filed against him in the amount of "$28,184."

91.     Equifax represented that its sources for these public records were "800 E. Marshall St., Richmond, VA 23219" and "4000 Chain Bridge Rd., Fairfax, VA 22030."

92.     Equifax did not obtain any civil judgment or tax lien information about Plaintiff Neill or about any consumer from "800 E. Marshall St., Richmond, VA 23219" or "4000 Chain Bridge Rd., Fairfax, VA 22030."

93.     Rather, Equifax obtained this civil judgment information about Plaintiff Neill from one of its private "vendors", including LexisNexis.

94.     Notwithstanding the FCRA's requirements, Equifax deprived Plaintiff Neill of this valuable information despite the requirements of the FCRA and according to its standard practice and procedure.

## PLAINTIFF LEWIS REQUESTS A COPY OF HIS EQUIFAX FILE

95.    In approximately September 2014, Plaintiff Lewis requested a full copy of his file from the Defendant via www.annualcreditreport.com.

96.    On or around September 29, 2014, in response to Plaintiff Lewis's request, Equifax provided and furnished to Mr. Lewis his conventional credit report.

97.    Plaintiff Lewis's September 29, 2014 credit report stated that he allegedly had a civil judgment entered against him in the amount of "$3,156."

98.    Equifax represented that its source for this public record was "800 E. Marshall St., Richmond, VA 23219."

99.    Equifax did not obtain any civil judgment or tax lien information about Plaintiff Lewis or about any consumer from "800 E. Marshall St., Richmond, VA 23219."

100.    Equifax did not disclose the name of the courthouse that recorded the judgment or the tax lien to the Plaintiff.

101.    Equifax obtained this civil judgment information about Plaintiff Lewis from one of its private "vendors", including LexisNexis.

102.    Notwithstanding the FCRA's requirements, Equifax deprived Plaintiff Lewis of this valuable information despite the requirements of the FCRA and according to its standard practice and procedure.

## THE DEFENDANT'S CONDUCT WAS WILLFUL

103.    The Defendant is well aware of its obligations under the Fair Credit Reporting Act.

104.    The Defendant knew about its legal obligation to provide all information in a consumer's file upon the consumer's request under the FCRA. These obligations are well

established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

105. Despite knowing of these legal obligations, the Defendant acted consciously in breaching its known duties and deprived the Plaintiffs and other members of the class of their rights under the FCRA.

106. Defendant's conduct was not a mere mistake or accident. Instead, it was the intended result of their standard operating procedures.

107. Additionally, Equifax has been sued repeatedly for failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it publishes and maintains, and for failing to provide a full consumer disclosure, including in this District and Division. *See, e.g., Mullins v. Equifax Information Services, LLC*, 3:05cv888, 2007 WL 2471080 (E.D. Va. August 27, 2007); *Saunders v. Branch Banking and Trust Co.*, 3:05cv731 (E.D. Va.); *Ross v. Experian Information Solutions, Inc.*, 3:09cv144 (E.D. Va. 2009); *Baker v. TransUnion, LLC*, 3:07-cv-107 (E.D. Va. 2007); *Roger Pace v. Equifax Information Services, LLC*, 3:11-cv-554 (E.D. Va. 2012).

108. Despite these lawsuits, Equifax has not significantly modified its procedures to assure that the credit reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

109. Upon information and belief, Equifax has not, and does not intend, to modify its procedures to comply with this section of the FCRA because compliance would drastically increase its operating expenses and compliance costs for both it and its business partners and vendors.

110.    Additionally, the Defendant obtained or had available substantial written materials that apprised it of its duties under the FCRA.

111.    Plaintiffs allege that the Defendant's conduct as alleged in this Complaint was consistent with its established and systemically executed procedures and policies for compliance with the FCRA.

112.    Accordingly, the Defendant's violations of 15 U.S.C. §§ 1681e(b) and 1681(g) were willful and it is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

### Count I:  Violation of 15 U.S.C. § 1681g(a)(2)
### Class Claim
### (All Plaintiffs)

113.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

114.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class defined as follows:

> All natural persons residing in the Fourth Circuit (a) who requested their consumer file from Equifax or any of its affiliated companies, subsidiaries, or any other Equifax entity, (b) within five years preceding the filing of this action and during its pendency, and (c) to whom Equifax provided a response that did not include any reference to its public records vendor as the source of public records information within the consumer's file disclosure. Excluded from the class definition are any employees, officers, or directors of Experian, any attorney appearing in this case, and any judge assigned to hear this action.

115.    Plaintiffs Brown, Clark Jenkins, Neill, and Lewis also propose a subclass limited to reports provided by Equifax through Central Source, LLC (the "Central Source Subclass"), defined as follows:

> All natural persons residing in the Fourth Circuit (a) who requested their Equifax consumer file from Central Source, LLC, (b) within five years preceding the filing of this action and during its pendency, and (c) to whom the Defendant provided a

response that did not include any reference to its public records vendor or to the name of the courthouse as the source of the public records information within the consumer's file disclosure. Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, and any judge assigned to hear this action.

116. Plaintiffs incorporate their prior allegations and estimate that the class is so numerous that joinder of all members is impractical. Although the precise number of Class members is known only to Defendant, Equifax sends tens of thousands of consumer file disclosures per year, and Equifax's uniform practice and procedure is to always omit the true source of its public records information from such disclosures. Accordingly, Plaintiffs estimate that the class size numbers in the thousands.

117. Plaintiffs' counsel is in possession of consumer files that Equifax sent to a consumer in response to his or her request for a complete copy of his or her Equifax consumer file. None of these letters or consumer files contains the actual source of the public records information that it reported about the Plaintiffs and the putative class members. This omission has have remained consistent and uniform across time, jurisdictions, and consumers.

118. There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members. For example, and without limitation: (a.) whether Equifax misrepresented the true source of its public records information in its consumer file disclosures; (b.) whether this failure was a result of the Defendant's standard operating procedure when responding to a consumer's request for a full copy of her or her credit file; (c.) whether the Defendant's conduct constituted a violation of the FCRA; (d.) whether the Defendant's conduct was willful; and (e.) the appropriate amount of statutory and/or punitive damages that are appropriate for such a violation.

119.    Plaintiffs' claims are typical of those of the class members.  All are based on the same facts and legal theories.  Equifax's response to a consumer's request for a full copy of his or her consumer file routinely failed to include any information about source of public records included on disclosures sent during the full class period. The violation alleged is the same and the class claim will rise and fall entirely based upon whether or not Plaintiffs' claim rises or falls.

120.    The Plaintiffs will fairly and adequately protect the interests of the class.  The Plaintiffs have retained counsel experienced in handling actions involving unlawful practices against consumers and class actions.  Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. The Plaintiffs are aware of their responsibilities to the putative classes and have accepted such responsibilities.

121.    Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper.  Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

122.    Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that the Defendant has acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

123.    Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.      As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member.  Each of the common facts and legal questions in the case overwhelm the more modest individual

damages issues.   Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

   b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually.   Further, most consumers affected by the Defendant's FCRA violation would likely be unaware of their rights under the law, or who they could find to represent them in federal litigation. Additionally, individual litigation of the uniform issues in this case would be a waste of judicial resources.   The issues at the core of this case are class wide and should be resolved at one time.   One win for one consumer would set the law as for every similarly situated consumer.

   124. The Defendant's failure to disclose all information in the consumer's file, including the sources of the public record information, in response to a consumer's request for this information violated 15 U.S.C. § 1681g(a)(2) as to the Plaintiffs and other putative class members.

   125. The conduct, action, and inaction of the Defendant were willful, rendering the Defendant liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

   126. Plaintiffs and the putative class members are entitled to recover costs and attorney's fees, as well as appropriate equitable relief, from the Defendant, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was

negligent entitling the Plaintiffs and the class to actual damages in the amount of the value of their consumer disclosure.

127.    As a result of these FCRA violations, the Defendant is liable to the Plaintiffs and to each putative class member for statutory damages from $100.00 to $1,000.00, punitive damages, and/or actual damages, as well as for their attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

## Count II: Violation of 15 U.S.C. § 1681e(b)
### Individual Claim
### (Plaintiffs Henderson and Thomas)

128.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

129.    Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiffs Henderson and Thomas.

130.    As a result of this alleged conduct, action, and inaction, Plaintiffs Henderson and Thomas suffered actual damages.

131.    Equifax's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

132.    The Plaintiffs are entitled to recover actual damages, statutory damages, costs, and their attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

**Count III: Violation of 15 U.S.C. § 1681i**
**Individual Claim Against Defendant Equifax Information Services, LLC**
**(Plaintiff Thomas)**

133.   Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

134.   Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation into the completeness and accuracy of information disputed by Plaintiff Thomas, and failing to provide a written description of the procedures used to determine the accuracy and completeness of the disputed information.

135.   As a result of this alleged conduct, action, and inaction, Plaintiff Thomas suffered actual damages.

136.   Equifax's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, it was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

137.   Plaintiff Thomas is entitled to recover actual damages, statutory damages, costs, and her attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

WHEREFORE, Plaintiffs, on behalf of themselves and the putative class members, move for class certification and for statutory and punitive damages, as well as their attorney's fees and costs for their class claim, as well as actual, statutory, and punitive damages, as well as their attorney's fees and costs for Plaintiffs Henderson's and Thomas's individual claims; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court deems just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted,
**PLAINTIFFS,** *on behalf of themselves and all*
*other similarly situated individuals*

By:_____
      Of Counsel

Matthew J. Erausquin, VSB No. 65434
Casey S. Nash, VSB No. 84261
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:   (703) 273-7770
Fax:   (888) 892-3512
matt@clalegal.com
casey@clalegal.com

Leonard A. Bennett, VSB No. 37523
Susan M. Rotkis, VSB No. 40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
Tel:   (757) 930-3660
Fax:   (757) 930-3662
lenbennett@clalegal.com
srotkis@clalegal.com

Kristi C. Kelly, Esq., VSB No. 72791
Andrew J. Guzzo, Esq., VSB No. 82170
Kelly & Crandall, PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
Telephone: 703-424-7572
Fax: 703-591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com

James Arthur Francis (*pro hac vice forthcoming*)
John Soumilas (*pro hac vice forthcoming*)
FRANCIS & MAILMAN PC
Land Title Building
100 S. Broad Street, 19th Floor
Philadelphia, PA 19110
Tel:     215-735-8600
Fax:    215-940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com

*Counsel for the Plaintiffs*