**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **JAMES JENKINS**, *et al.*, *individually* | : | |
| *and on behalf of all others similarly situated,* | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 3:15-cv-443** |
| | : | |
| **EQUIFAX INFORMATION SERVICES, LLC,** | : | |
| | : | |
| **Defendant.** | : | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

Plaintiffs, on behalf of themselves and all others similarly situated (the "Class" as further defined below), entered into a class action Settlement Agreement ("Settlement Agreement" or "Agreement") with Defendant Equifax Information Services, LLC ("Equifax") and now seek the Court's preliminary approval of the Settlement. In support of the motion for an Order preliminarily approving the class action settlement, scheduling a fairness hearing, certifying the proposed settlement class for purposes of the proposed class settlement, appointing class counsel, and approving the form and manner of notice proposed to be sent to all members of the settlement class, the Plaintiffs submit this memorandum.

**OVERVIEW**

This case challenges the manner in which Equifax discloses the "source" of its public record items (judgments, liens and bankruptcies) when consumer class members requested a copy of their credit reporting file. *See* 15 U.S.C. § 1681g(a) ("Every consumer reporting agency shall, upon request … clearly and accurately disclose to the consumer: (1) All information in the consumer's file at the time of the request … [and] (2) *The sources of the information*[.]")

(emphasis added). Equifax and its competitors Trans Union and Experian (collectively, the "Big-3") purchase their public records from a private source – LexisNexis – rather than from the courthouse or government agency. This adds a hidden layer of potential error and complex legal obstacles for consumers attempting to resolve or understand public records issues in their credit reports.[1] But until this case, Equifax and other consumer reporting agencies ("CRAs") concealed that fact. But the present effort of Plaintiffs' counsel to force a change in this procedure did not begin with the filing of a Complaint in this case.

In May 2007, present Plaintiffs' counsel filed the first of several class actions targeting the "Big-3" credit reporting agencies' practice of concealing LexisNexis as their records' source. In this first wave of actions, Counsel represented consumers who had disputed inaccurate judgment records were told to contact the source – the actual courthouse where a subject record was kept. *Chakejian v. Equifax Information Services LLC*, Case No. 2:07-cv-02211 (E.D. Pa.).[2]

---

[1] As a University of Pittsburgh law review commenter explained as to one such public record category:

> FCRA mandates that furnishers of information to CRAs have a continuing duty to report updates in previously disclosed information. While this protection is adequate in the case of most creditors, it has proven inadequate in the case of IRS liens. The problem arises because the IRS does not directly communicate information to the CRAs. Rather, it files the tax lien with the court clerk, as public record, in the jurisdiction where the subject assets are located. CRAs discover the IRS liens by searching these public files. When the taxpayer's federal debt is satisfied, the IRS files a Certificate of Release of Federal Tax Lien with the clerk but again leaves it to the CRAs to search public records and take note of the release. The absence of direct communication between the IRS and the CRAs allows the IRS to claim it is not a "furnisher" of information, and thus is exempt from the FCRA requirement to promptly update changes to any information provided to CRAs.

Phillip C. Hong-Barco, *How the Fair Credit Reporting Act Fails to Protect: The Case of Irs Tax Liens on Consumer Credit Reports*, 3 Pitt. Tax. Rev. 181, 182 (2006).

[2] Three comparable state-specific actions were filed by present Plaintiffs' counsel (James Francis, Leonard Bennett and/or Matt Erausquin) to prosecute a violation of 15 U.S.C. § 1681i,

Those cases were litigated under a more narrow FCRA provision (§1681i, governing what a CRA disclosed after a consumer dispute) and settled in June 2011 with changes to the information agencies disclosed in *that* context.

Thereafter, present Plaintiffs' counsel devoted substantial resources and efforts to discover, reach out to and investigate the claims of numerous consumers who could represent a class as to each Big-3 CRA. The first of these new class cases was filed against Trans Union, and in October 2014, the federal court in Pennsylvania denied that CRA's motion to dismiss and rejected its argument that, "'[t]hose who retrieve data for [a CRA] are not sources of credit data, as contemplated by Section 1682g(a)(2) [because] [t]hese intermediaries do not originate, generate or maintain tax lien records, and accordingly they are not 'sources' of these records.'" *Dennis v. Trans Union, LLC*, CIV.A. 14-2865, 2014 WL 5325231, at *6 (E.D. Pa. Oct. 20, 2014). Following the *Dennis* decision, the present group of Plaintiffs' counsel joined to prosecute each of three cases (now including *Dennis*) against the Big-3 with the objective of forcing each CRA into FCRA compliance. On July 28, 2015, the Plaintiffs filed a Complaint in the above-captioned class action (the "Lawsuit").

At all times during the pendency of this case, Equifax vigorously denied all claims asserted against it in this action. It contended that its past and current procedures with respect to reporting public records were reasonable and compliant with the FCRA and did not constitute a willful violation of the statute. Equifax was prepared to try this case on its merits, exposing

---

alleging, "Equifax falsely represents the identity of the entity from which it obtains public records in response to consumer disputes." *Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 206 (E.D. Pa. 2011). *See also Summerfield v. Equifax Information Services LLC*, Case No. 08-1450 (D. N.J.); *Soutter/Webb v. Equifax Information Services LLC*, 3:10cv107, ECF No. 3 (E.D.Va. Feb. 26, 2010).

Plaintiffs to an uncertain outcome, particularly regarding the amount of damages available to the class.

This case has been diligently litigated since its filing. To date, the Parties have exchanged all necessary information and engaged in extensive settlement negotiations, including multiple formal mediation sessions, which resulted in the culmination of the Settlement Agreement. This settlement provides groundbreaking changes and adds significant consumer protections to Equifax's credit-reporting procedures, as well as a substantial tangible benefit, an eighteen-month premium credit-monitoring subscription, to all class members.

Pursuant to Fed. R. Civ. P. 23, the Plaintiffs now seek preliminary approval of the proposed class action settlement of the FCRA claims. Specifically, the Plaintiffs request that the Court preliminarily certify the proposed class and the proposed class settlement by entering the proposed Order of Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order").

## PLAINTIFS' COUNSEL'S CONDITIONS

This is an unusual case and an unusual settlement. The violation at issue here – the failure to fully disclose information in a credit report – was not the type of FCRA claim that could present provable and measurable actual damages. The harm addressed is significant, but it would occur only over multiple steps with causation challenges at each: (a.) class member requests their credit file disclosure; (b.) it contains a public record judgment inaccurately represented to have been affirmatively reported to Equifax by the Richmond General District Court. What now? Was the item objectively inaccurate? Would the inaccuracy have been of the type that LexisNexis would or could correct if the consumer contacted that furnisher-source directly? Was the consumer harmed by the much longer, multi-step process to learn of and take

action regarding the record?  Because of these challenges, Plaintiffs prosecuted this as a willfulness claim seeking statutory damages between $100 and $1,000.

The case presented other important challenges.  The putative class size is huge – over 2 million persons.  Notice is expensive.  A meaningful cash settlement would be impossible.  And even with the important injunctive relief Plaintiffs' Counsel has demanded, Equifax will be out in front of its industry competitors and at odds with its furnisher-source, LexisNexis.

On the otherhand, Plaintiffs' Counsel entered the case and then settlement negotiations with several structural conditions that would remain "off the table" throughout this process.  First, they would not agree to a release of damages unless the class received a cash settlement.  Second, notice would have to be direct (as opposed to by publication) in order to permit targeted consumers to know that they are in the class without their separate investigation or inquiry).[3]  Third, there had to be a built-in mechanism to encourage and empower class members to obtain and received their corrected credit report.   And, of course, lastly, Equifax had to disclose LexisNexis and provide contact information sufficient to permit direct disputes, as well as handle public records disputes in a manner that either corrected the disputed item or provided notice to LexisNexis in order that it would do so.  See 15 U.S.C. § 1681i(a)(2)(A) ("agency shall provide notification of the dispute to any person who provided any item of information in dispute[.]")

The proposed settlement satisfies each of these conditions while fully addressing the objectives of the Lawsuit.

## PROPOSED CLASS ACTION SETTLEMENT

---

[3] This term was more significant than it may appear.  If the settlement had been solely under Fed. R. Civ. P. 23(b)(2), direct notice and a right to opt out could have been avoided.  *Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 3:11-CV-754, 2014 WL 4403524, at *11 (E.D. Va. Sept. 5, 2014) *aff'd sub nom. Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015).  Plaintiffs' Counsel resisted such a "pure-23(b)(2)" compromise.

## A.     Settlement Terms

The Parties settled the FCRA claims on a class basis ("Proposed Settlement") upon these basic terms:

1.     In the most significant, groundbreaking aspect of the settlement, Equifax will add to the public records section of any consumer file provided to consumers containing a public record a disclosure that will identify the name, physical address, and website of the vendor that supplies any public record in the file that could be furnished in a Consumer Report. In doing so, Equifax will become the first of the nationwide credit-reporting agencies to disclose the source of its public record information. Notably, this injunctive relief would not have been available under the FCRA had the parties decided to proceed to trial; instead, it is uniquely available through class settlement. Additionally, in the event a consumer disputes a public record item, Equifax will either forward the dispute to the vendor from which it obtained the public record item or directly resolve the consumer's dispute in the consumer's file, as appropriate. This is a critical change to Equifax's current dispute resolution policy. Under Equifax's previous policy, consumers often were unable to effectively dispute any incorrect public record information, leading to inaccurate reports and multiple failed disputes. This is because of the FCRA's unique dispute structure.  A consumer accrues a private cause of action against a furnisher-source only when her dispute is conveyed "indirectly" through the CRA.  *See* 15 U.S.C. § 1681s-2; *see e.g.* *Kelly v. SunTrust Bank*, 3:14-CV-121, 2016 WL 775781, at *4 (E.D. Va. Feb. 25, 2016).

2.     The change in procedure obtained in this settlement will not only alleviate that problem for the class members, but will also hereafter benefit millions of consumers who have public records listed in their Equifax consumer report, both currently and in the future;

3. All class members will automatically receive eighteen months of Equifax's leading credit monitoring service that it actually sells for $14.95 a month (a total value of $269.10). (Equifax Credit Watch Gold includes electronic monitoring and alerts of both the consumer's Equifax credit file and the credit score based on that file, unlimited access to and copies of the consumer's Equifax file and credit report, a live agent available 24-hours a day for assistance, automatic fraud alerts, and—perhaps most critical—and insurance protection plan against identity theft). This product is among the best available on the market and provides a real, tangible benefit to class members. All Class Members will automatically receive the benefit of a credit-monitoring subscription without having to submit a claim form, nor will they have to supply a credit card or other method of payment to activate the subscription;

4. The Settlement does not release *ANY* damage claims. In fact, the only limitation imposed is a bar on repeating another FCRA case as a class action. *Compare Berry v. Schulman*, 807 F.3d 600, 604 (4th Cir. 2015) (affirming the Court's approval of a Rule 23(b)(2) settlement in which "the class members would release any statutory damages claims under the Act" in exchange for only injunctive relief.)

5. The cost of Notice and Administration and Plaintiffs' counsel's attorney's fees will be paid by Equifax. For a class of this size, this was a major point of contention.

**B. Certification of a Fed. R. Civ. P. 23(b)(3) Settlement Class.**

The Parties seek preliminary certification of a Fed. R. Civ. P. 23(b)(3) class, defined in the Settlement Agreement and proposed Agreed Preliminary Approval Order as follows:

> All consumers in the United States who, within two years preceding the filing of this Action until the date of preliminary approval, received a credit file disclosure from Equifax containing a public record.

(Ex. 1, ¶ 2.20).

**C.      Third-Party Settlement Administrator**

Plaintiffs' counsel asks the Court to appoint and hire a third party class action settlement administrator (the "Settlement Administrator"), to oversee the administration of the settlement and the notification to Class Members. All costs and expenses for the Settlement Administrator shall be paid directly from Equifax, pursuant to the Settlement Agreement ¶ 6.1. The Settlement Administrator will be responsible for mailing the approved class action notices and claim forms to the Class Members.

**D.      Mailed Notice**

Within fifteen (15) business days after entry of the Preliminary Approval Order, Equifax will provide the name and email address for each Settlement Class Member to the Settlement Administrator.  If Equifax does not have an email address for a Settlement Class Member, it will provide the Settlement Administrator with the Settlement Class Member's mailing address and such other information as is necessary for the Settlement Administrator to obtain the Settlement Class Member's email address using an email append service.  If the Settlement Administrator is unable to obtain a valid email address for a Settlement Class Member, it shall run the Settlement Class Member's mailing address once through the National Change of Address database before mailing. Ex. 1, ¶ 6.3.

Within forty-five (45) days of Preliminary Approval, the Summary Class Notice will be sent by email to all class members for whom Equifax and/or the class administrator has or locates a valid email address.  The subject line of the email will read:  "Jenkins v. Equifax: Class Action Notice—Read for Information About Potential Benefits."  Plaintiffs' Counsel negotiated and agreed to sending notice via e-mail for some class members for two reasons.  First, the majority of class members will have electronically requested and received their credit file

disclosure that triggered the violation alleged in the Lawsuit. Equifax maintained e-mails will be particularly more accurate than those generically purchased from a third party. Second, the Parties have built specific protections into the notice process to accommodate the possibility that many class members may nonetheless not be reached through e-mail notice. The notice will be sent by the Settlement Administrator using a domain that shows as associated with Equifax, since every class member by definition had been in direct communication with that entity. Further, if an e-mail address is rejected or ineffective, or if a reliable e-mail address is not available, the Settlement Agreement requires that the Settlement Administrator mail a paper Summary Class Notice.

The Summary Class Notice will be sent by regular U.S. mail to class members for whom Equifax and/or the class administrator does not have a valid email address, including class members to whom notice is sent by email but returned as undeliverable. The Summary Class Notice will request that class members provide a valid email address, if necessary, to send a second reminder notice with the credit monitoring activation code if and when the Court grants final approval. For any mailed notice that is returned to the Settlement Administrator within 30 days of the postmark of the original notice and with a forwarding address, the Settlement Administrator shall re-mail the notice to the provided forwarding address within 5 business days of receipt. Ex. 1, ¶ 6.4.

Additionally, the Settlement Administrator will establish a Settlement Website, containing relevant information such as the Settlement Agreement, the Class Notice, the Opt-out Form, the Preliminary Approval Order, a mutually agreed section of frequently asked questions, contact information for the Settlement Administrator, and any other documents that the Parties jointly determine to be appropriate. Ex. 1, ¶ 6.5. Finally, in accordance with the Court's

instructions in an earlier case, the Parties have agreed that the Settlement Administrator will also send a notice of approval after the Final Fairness hearing in order to deliver the Credit Monitoring activation codes to each class member and permit a final set of claims or reservation of actual damage requests.

**E.      Class Counsel's Fees, Costs, and Expenses**

Plaintiffs and their counsel will ask the Court to approve the attorneys' fees and service awards negotiated by the Parties and permitted in the Settlement Agreement. Ex.1, ¶ 4. Both of these subjects—fees and service awards—were addressed in mediation only after the Parties had reached an agreement as to the recovery for the class.

Plaintiffs' counsel's attorney's fee request will include their efforts in obtaining the injunctive relief that the settlement provides, based in large part on the value of the relief to consumer and the dynamic shift that it represents in the industry. As previously explained, the change in business practices negotiated by Plaintiffs and their counsel is substantial. The injunction affords far better substantive relief than the Court or a jury could compel following a complete victory on all of Plaintiffs' claims. The relief represents a sea change in the practices of Equifax, and those practice changes will provide genuine relief to millions of American consumers. After an agreement was achieved on the substance of the injunctive relief, the Parties then began to negotiate reasonable attorneys' fees as compensation for that portion of the settlement. This amount is paid entirely by Equifax and does not reduce the class benefits.

The question of attorneys fees is not yet before the Court.  But several points bear noting. Obviously, the stipulated fee - $2.8 million – is a lot of money, even for the large team and multiple firms involved.  As just stated, the amount of a fee demand was not even mentioned in or out of the mediation until everything regarding the class recovery, release and injunctive relief

was complete. There were no 'winks' or subtle messaging. After the settlement terms were complete (the selection of a specific Settlement Administrator was literally the only material term still in play), the Parties started negotiating the fee that Equifax would agree to pay. The number reached was as a result of a separate continuous round of negotiations through Judge Birch and thereafter.

Additionally, there is no possible argument that the fee would compete with or take money away from the Class. "Here, class counsel's fee was negotiated by the parties, and the Agreement allowed for a total attorneys' fee award … to be paid entirely by" the Defendant." *Berry v. Schulman*, 807 F.3d 600, 617 (4th Cir. 2015). As the Fourth Circuit stated in the comparable *Berry* settlement, "this case does not raise the kind of concerns that might call for an especially robust or detailed explanation of a fee award by a district court. There is no reason to worry here that 'the lawyers might [have] urge[d] a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees.' … [G]iven the size of the (b)(2) Class and the fragility of its legal position, there was never any realistic possibility of class-wide monetary relief; put bluntly, there is no reason to think that class counsel left money on the table in negotiating this Agreement." *Id*. at 618. In fact, in the present case, there cannot be even a theoretical argument of a collusion to sell class member claims because none of those – not even the statutory damages released in *Berry* – are released.

Finally, to finish the preview of Plaintiffs' Counsel's later argument, the fee sought was intended to compensate and reflect several things – (a.) all of the work leading up to the filing of the Lawsuit (investigations, the huge effort to find and retain consumer clients, the preparation for the filing of the case); (b.) all of the work during the litigation and mediation, through Final approval; and (c.) the huge amount of work that this settlement structure and class size will

impose. A class of millions will pose tremendous resource and logistical burdens on each of the firms involved. The typical FCRA class settlement approved in the Court with a class size of 100,000 to 200,000 imposes thousands of employee and attorney hours *after* Final Approval. The present counsel team has always provided their contact information to the class and has represented each class member as their individual client. If the class member needs or wants to speak with an attorney, they get to do so. In this case, there will be millions of class members. And those class members will be facing a settlement structure that seeks to empower the class member to take new action outside of this case – request and review their credit file and seek correction of any inaccurate public record or other tradeline. If the Court ultimately approves the stipulated fee, Plaintiffs' Counsel will receive a substantial fee, but not one outside of the multiples consistently approved by the Court and in this Circuit.

## ARGUMENT

"The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). "Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" *Id*. "For in such cases, 'the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.'" *Id.*

There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation. *See In re MicroStrategy, Inc. Sec. Litig.,* 148 F. Supp. 2d 654, 663 (E.D. Va. 2001); *see also Ehrheart v. Verizon Wireless,* 609

F.3d 590, 595 (3d Cir. 2010) (there is an "especially strong" presumption in favor of voluntary settlements in "class actions . . . where substantial judicial resources can be conserved by avoiding formal litigation."); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (same); *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (same); 2 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). This includes the "strong initial presumption" in class action cases "that the compromise is fair and reasonable." *In re MicroStrategy*, 148 F. Supp. 2d at 663 (internal quotation marks omitted). Proposed settlements must, nevertheless, satisfy the requirements of Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 592 (1997).

Rule 23 "states that '[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 599 U.S. 393, 398 (2010) (quoting Fed. R. Civ. P. 23). Although the Defendant specifically denies all claims asserted against it, the Rule 23(a) and (b) elements have already been established by prior Order of the Court. (Doc. 224).

A.     **The Rule 23(a) Requirements are Satisfied.**

Rule 23(a) sets forth four basic requirements for any class action—numerosity, commonality, typicality, and adequacy. This Lawsuit satisfies the Rule 23(a) prerequisites. Each Rule 23(a) factor is considered in turn below.

   *1. Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

impracticable." There is no set minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (citing *Kelley v. Norfolk & Western Ry. Co.*, 584 F.2d 34 (4th Cir. 1978)). However, where the class numbers 25 or more, joinder is usually impracticable. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967) (18 class members sufficient); *cf. Kennedy v. Va. Polytechnic Inst. & State Univ.*, 2010 U.S. Dist. LEXIS 101491, at *6 (W.D. Va. Sept. 23, 2010) ("it is exceedingly rare to certify classes with less than 25 members").

The numerosity requirement is met here. There are millions of class members, including the named Plaintiffs as class representatives. Joinder of this many individuals is neither possible nor practical, so the first prong of the certification test has been met. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003) (finding that a class of 1,400 members "easily satisfied Rule 23(a)(1)'s numerosity requirement").

### 2. Commonality

Rule 23(a)(2) requires that the court find that "there are questions of law or fact common to the class." "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003). "And the common issue must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. The standard is a liberal one that cannot be defeated by the mere existence of some factual variances in individual grievances among class members. *Jeffreys*, 212 F.R.D. at 322; *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) (finding that factual differences among class members will not necessarily preclude certification "if the

class members share the same legal theory.").

Here, by definition, members of the Settlement Class share the same questions of law and fact. The members of the Settlement Class are alleged to be the victims of policies and procedures whereby Defendant, in violation of the FCRA, failed to clearly and accurately disclose the source of the public record information in consumers' Equifax consumer reports. The theories of liability as to all Settlement Class members, therefore, arise from the same practices and present basic questions that are common to all members of the Settlement Class.

### 3. *Typicality*

In the typicality analysis, "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 146 (4th Cir. 2001). "Nevertheless, the class representatives and the class members need not have identical factual and legal claims in all respects. The proposed class satisfies the typicality requirement if the class representatives assert claims that fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. and Power Co.,* 217 F.R.D. 201, 212 (E.D. Va. 2003). "The typicality requirement mandates that Plaintiffs show (1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Jeffreys*, 212 F.R.D. at 322. Commonality and typicality tend to merge because both of them "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 131 S. Ct. at 2551 n.5.

Here, Plaintiffs' claims arise from Defendant's practices concerning the failure to

disclose the source of the public record information that Equifax reported about the Plaintiffs and putative class members. As discussed in the previous section, these are the same claims advanced on behalf of all of the Settlement Class Members. Plaintiffs are Settlement Class Members. Plaintiffs' claims thus rest on the same legal and factual issues as those of the Settlement Class Members. Consequently, in seeking to prove their claims, Plaintiffs will necessarily advance the claims of Settlement Class Members. This is the hallmark of typicality. *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2001) (citing Fed. R. Civ. P. 23(a)(3)).

### 4. Adequacy of Representation

"Finally, under Rule 23(a)(4), the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys,* 212 F.R.D. at 323. "Basic due process requires that the named plaintiffs possess undivided loyalties to absent class members." *Fisher*, 217 F.R.D. at 212 (citing *Broussard v. Meineke Disc. Muffler Shops,* 155 F.3d 331, 338 (4th Cir. 1998)).

The adequacy of representation requirement is met here. Plaintiffs understand and have accepted the obligations of a class representative, have adequately represented the interests of the putative class, and have retained experienced counsel who have handled numerous consumer-protection class actions. Plaintiffs' lead counsel has effectively handled numerous consumer-protection and complex class actions, typically as lead or co-lead counsel. *Soutter v. Equifax Info. Servs.*, *LLC*, 2011 U.S. Dist. LEXIS 34267, at *28 (E.D. Va. Mar. 30, 2011) (stating "the Court finds that Soutter's counsel is qualified, experienced, and able to conduct this litigation. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as Class Counsel in numerous cases."); *James v. Experian Info. Solutions, Inc.*, No. 3:12CV902 (E.D. Va. Oct. 29, 2014) (ruling on final approval

in open court and finding "experience of counsel on both sides is at the top level of representation in cases of this sort and, indeed, perhaps beyond that"); *see also* Declaration of Leonard Bennett (attached as Exhibit "2").

Plaintiffs have no antagonistic or conflicting interests with the Class Members. Both Plaintiffs and the Class Members seek statutory and punitive damages for Defendant's alleged unlawful actions. The Plaintiffs are members of the Settlement Class. Considering the identity of claims, there is no potential for conflicting interests in this action. Accordingly, the class is adequately represented to meet Rule 23's requirements.

**B.    The Rule 23(b) Requirements are Satisfied.**

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. The Class provides for the provision of benefits to its members, such as credit-report monitoring and therefore must meet the requirements of Rule 23(b)(3): that questions of law or fact common to the members of the Class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Eisen v. Carlisle Jacquelin*, 417 U.S. 156 (1974). However, the Settlement also provides for substantial injunctive relief, and therefore could also be certified under Rule 23(b)(2), which requires a showing that the defendant "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief . . .with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Both Rule 23(b) standards are discussed below.

### 1.   The Class Should Be Certified Under Rule 23(b)(3).

Rule 23(b)(3) actions may be permitted in "situations in which class-action treatment is not as clearly called for, but may nevertheless be convenient and desirable." *Id.* at 615 (internal quotation marks omitted). To certify such a class, the court must find that "the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). Preliminary certification of the proposed class is appropriate under Rule 23(b)(3). The predominance and superiority factors are addressed below.

### a. *Predominance*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3). In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

The predominance requirement is satisfied here because the essential factual and legal issues regarding the Settlement Class Members' claims are common, *e.g.*, whether: (1) Defendant failed to clearly and accurately disclose as its the source the third-party public records vendor; (2) the Defendant's actions were a violation of the FCRA; and (3) the Defendant acted willfully. Because these issues are common, and indeed are determinative of the Rule 23(b)(3) Settlement Class Members' claims, they far outweigh the importance of any individual issues particular to Settlement Class Members.

This conclusion accords with the findings of courts examining predominance in the context of similar consumer claims, alleging that plaintiffs were the victims of common practices. *See, e.g.*, *Talbott* ("Here, common questions predominate because of the standardized nature of [defendant's] conduct . . . ")  (Rule 23(b)(3) is normally satisfied where there is an essential common factual link, such as standardized documents and practices); *see also Amchem*, 521 U.S. at 625 (noting that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud… ."). In this case, the allegations are that the Defendant failed to timely update judgment dispositions as required by 15 U.S.C. § 1681e(b). Plaintiffs' and the putative class members' claims are identical, and all issues are subject to the same proof.  Proof of the class claims will leave nothing for Plaintiffs to prove individually. Class-wide claims predominate over any individual claims.

   **b.** ***Superiority***

The superiority inquiry requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3). When determining whether a class action is superior, the Court should consider the following factors:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or  undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Jeffreys,* 212 F.R.D. at 323; *see also* Fed. R. Civ. P. 23(b)(3)(A)-(D).

 "In determining superiority, courts also consider the anticipated amount of recovery for each plaintiff.  Class actions are particularly appropriate where multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs." Advisory

Committee's Note to 1996 Amendment to Rule 23. In other words, a class action is superior when potential damages may be too insignificant to provide class members with incentive to pursue a claim individually. Thus, the class mechanism permits a large group of claimants to have their claims adjudicated in a single lawsuit. The same is true here. Common issues predominate among the Settlement Class. Further, the individual claims of the Settlement Class Members are small, thus providing little incentive for individual litigation, and the Settlement Class Members are dispersed over multiple states.[4] *See also Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997)). A class action in this case is superior to other available methods for the fair and efficient adjudication of the controversy because a class resolution of the issues described above outweighs the difficulties in management of separate and individual claims and allows access to the courts for those who might not gain such access standing alone, particularly in light of the relatively small amount of the actual and statutory damage claims that would be available to individuals. Moreover, such a certification permits individual claimants to opt-out and pursue their own actions separately if they believe they can recover more in an individual suit. Thus, both predominance and superiority are satisfied. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Bush*, 2012 WL 1016871, at *11 (quoting *Amchem*, 521 U.S. at 617). Rule 23(b)(3) was designed for situations such as this, where the

---

[4] Manageability need not be considered in certifying a settlement class. *See Amchem*, 521 U.S. at 620 (1997) (stating that a trial court may disregard management issues in certifying a settlement class).

amount in controversy for any individual claimant is small, but injury is substantial in the aggregate.

The class action procedure is the superior mechanism for dispute resolution in this matter. The alternative mechanism, permitting individual lawsuits for a small statutory penalty, would be costly and duplicative. Through the class action procedure, these common claims can be brought in one proceeding, thereby eliminating unnecessary duplication, preserving limited judicial resources, and achieving economies of time, effort, and expense.

### 2. The Class Could Also Be Certified Under Rule 23(b)(2).

Parties seeking class certification under Rule 23(b)(2) must show that the defendant has "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief . . .with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2); *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 329 (4th Cir. 2006) (alterations in original). More simply stated, Rule 23(b)(2) certification is proper "if members of the proposed class would benefit from the injunctive relief" *Cuming v. S.C. Lottery Comm'n*, No. 3:05-cv- 03608-MBS, 2008 WL 906705, at *6 (D.S.C. March 31, 2008) (citing *Thorn*, 445 F.3d at 331). In addition, any request for monetary relief by the class must be "incidental" to the injunctive relief before certification under Rule 23(b)(2) is appropriate. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998); *Thorn*, 445 F.3d at 329 ("Rule 23(b)(2) does not 'cover cases where the primary claim is for damages, but is only applicable where the relief sought is . . . predominantly injunctive or declaratory.'") The Class satisfies both of these requirements.

Plaintiffs allege that Equifax failed to clearly and accurately disclose the source of its third-party public records vendor. Instead, Equifax completely omitted any notation that it relied on third-parties to obtain public record information, including information about civil judgments,

tax liens, and bankruptcies, so that it appeared that Equifax was obtaining this records directly from the court source. The Settlement Agreement treats all Class Members alike in granting them the substantial benefits of the injunctive relief obtained in settlement, whereby Equifax will now list the name and contact information of the third-party vendor that supplied the public record information listed in a report, and will also have a mechanism in place where consumer disputes regarding public record information will be forwarded to the vendor that supplied it. Injunctive Relief program. Protecting Plaintiffs' interests in the proper disclosure of the source of their public record information as proscribed by the Settlement Agreement is analogous to the classic Rule 23(b)(2) cases in which "various actions in the civil-rights field" dealing with discrimination were certified as Rule 23(b)(2) class actions, so that class-wide discrimination could be remedied with a class-wide program of relief. *See* Fed. R. Civ. P. 23 advisory committee's note. Such injunctive relief is a powerful, efficient, and effective way of protecting broad interests like the proper treatment of information when out-of-pocket monetary losses are sometimes difficult to prove based on the violation of such interests.

While Defendant maintains that it has always acted in compliance with the law, the fact that the Settlement modifies Defendant's conduct as to the class as a whole makes it appropriate for certification under Rule 23(b)(2). *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011) ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'") (citation omitted). The injunctive relief provided for in the settlement will provide a direct benefit to the class members going forward because, due to length that a public record is reported, consumers who are the subject of an Equifax report containing public record information are likely to be the subject of

additional reports in the future.

The class also meets Rule 23(b)(2)'s second requirement—that any request for monetary relief be merely "incidental" to the injunctive relief provided in the settlement. Plaintiffs seek only statutory damages on behalf of the class. Specifically, Plaintiffs sought to cause Defendants to modify its disclosure policy regarding its third-party public record vendors. The settlement provides this relief through the policy change that Equifax has agreed to. In sum, the class is properly certified pursuant to Rule 23(b)(2) because the predominating interests of the class are addressed by injunctive relief and Plaintiffs' demand for statutory damages was merely a means to that end.

**C.     The Proposed Settlement is Fundamentally Fair, Reasonable, and Adequate.**

With the Rule 23(a) and (b) elements previously established by the Court in certifying the class, it is still incumbent upon the Court to decide whether the proposed settlement is fair, reasonable and adequate. Although pretrial settlement of class actions is favored, "Rule 23(e) provides that 'a class action shall not be dismissed without the approval of the court." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991) (citations omitted). "To this end, 'the role of the Court reviewing the proposed settlement of a class action under Fed. R. Civ. P. 23(e) is to assure that the procedures followed meet the requirements of the Rule and . . . to examine the settlement for fairness and adequacy.'" *In re MicroStrategy*, 148 F. Supp. 2d at 663.

"[T]he Fourth Circuit [has] adopted a bifurcated analysis, separating the inquiry into a settlement's 'fairness' from the inquiry into a settlement's 'adequacy.'" *Id*. These safeguards ensure that "a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Amchem*, 521 U.S. at 621; *see also In re Jiffy Lube*, 927 F.2d at 158 ("The primary concern addressed by Rule 23(e) is the protection of class members who

rights may not have been given adequate consideration during the settlement negotiations."). In this case, each set of factors weighs in favor of approving the Settlement.

### 1. *The Proposed Settlement is Fair.*

When evaluating the fairness of a settlement, the Court must evaluate the settlement against the following criteria: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *In re Jiffy Lube*, 927 F.2d at 159. The fairness inquiry ensures that "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *Id.* These factors point persuasively to the conclusion that the settlement here is fair.

The settlement was reached after significant work was conducted in this case. The Parties engaged in informal document exchange and thoroughly investigated the facts and claims at issue. The parties engaged in extensive, good faith, arms'-length negotiations in two separate mediations supervised by the Honorable Stanley Birch, a retired judge on the United States Court of Appeals for the Eleventh Circuit. A settlement was reached as a result of these mediations and subsequent discussions between the parties.

Pursuant to the settlement, the putative class members are guaranteed a substantial recovery with ground-breaking injunctive relief and credit monitoring for eighteen months. The settlement is narrowly drawn to limit the release to matters regarding the identification of a public records vendor engaged by Equifax as a source or furnisher of public records information. Other FCRA claims are expressly excluded. Particularly considering the relief obtained here— the disclosure of Equifax's third-party public records vendor, which will make disputing inaccurate public records easier and more likely to resolve a consumer's dispute—this settlement

is not only fair to the class members, but it will also provide relief and prevent future harm to a large group of consumers, not just class members.

Given the substantial relief obtained for the class members, when contrasted against the risks associated with litigating this matter, the proposed settlement is fair and appropriate for approval. *See S. Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (concluding fairness met where "discovery was largely completed as to all issues and parties," settlement discussions "were, at times, supervised by a magistrate judge and were hard fought and always adversarial," and those negotiations "were conducted by able counsel" with substantial experience in the area of securities law).

### 2. The Proposed Settlement is Adequate.

In assessing the adequacy of the settlement, the Court should look to the following factors: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *In re Jiffy Lube*, 927 F.2d at 159.

While it is too early to address the last factor, *i.e.*, the reaction of the Class Members to the proposed settlement, application of the other relevant factors confirms that the proposed settlement is adequate and should be preliminarily approved.

### a. *The Relative Strength of the Plaintiffs' Case and the Difficulty in Proving Liability.*

As noted, Defendant has disputed Plaintiffs' claims since the inception of this case and has raised a number of defenses to Plaintiffs' class claims. Given the Parties' arguments, the potential risks and expenses associated with continued prosecution of the Lawsuit, the

probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation, the proposed settlement is adequate.  As the Court recently summarized in another FCRA settlement, "Given these difficulties with the willfulness claim, the benefit of the substantial relief provided by the settlement without the risk of litigation demonstrates the adequacy of the Settlement Agreement." *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, 3:14CV238(DJN), 2016 WL 1070819, at *4 (E.D. Va. Mar. 15, 2016).

### b. *The Anticipated Duration and Expense of Additional Litigation.*

Aside from the potential that either side will lose at trial, the Parties anticipate incurring substantial additional costs in pursuing this litigation further. The level of additional costs would significantly increase as the Parties began formal discovery, including the issuance of written discovery, depositions, and expert witness disclosures. Thus, the likelihood of substantial future costs favors approving the proposed settlement.

Even more importantly, the long delay threatened by two-phase litigation, interlocutory appeal and terminal appeal would prevent the change to Equifax's reporting and disclosure procedures that were the ultimate goal of the Lawsuit.   Between now and the very end of a contested path, a million or more new consumer files will have been furnished to consumers without the LexisNexis disclosure.

### c. *The Solvency of the Defendant and the Likelihood of Recovery.*

Defendant is solvent and in theory could pay a class judgment. However, there was absolutely no path available for a meaningful cash settlement.  The actual defendant in the Lawsuit is actually only Equifax Information Services, LLC, a subsidiary of the larger parent Equifax, Inc.  And assuming for example a $1 billion net worth for EIS, a payment of just $100 to 2.5 million people would require as much as $250 million – or 25% of the EIS net worth.

Assuming that EIS is not simply a cash holding company, such a payment would require the liquidation of most of its salable hard assets. This factor weighs heavily in favor of approval of the unique and "release-less" settlement structure before the Court.

### d. *The Proposed Class Notice is the Best Notice Practicable under the Circumstances.*

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. Pursuant to Rule 23(c)(2)(B):

> The notice [for Rule 23(b)(3) classes] must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3).

Further, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" the proposed settlement. Fed. R. Civ. P. 23(e)(1).

Individual notice is being provided directly to each Class Member by a combination of e-mail notice and U.S. Mail. In addition, Class Counsel will establish a website with relevant information concerning the case and the Agreement. Before sending the written notice, Defendant and the Settlement Administrator will confirm and, if necessary, update the e-mail and mailing addresses for the Class Members through the standard methodology the administrator currently uses to update addresses so as to ensure the last known address for each Class Member is used. Such a notice plan easily satisfies Rule 23(c). *See Noll v. eBay, Inc.*, 309 F.R.D. 593, 601 (N.D. Cal. 2015) (Approving combination notice "(i) by email to each Class Member, which shall include a hypertext link to the Settlement website; (ii) by Internet Posting, i.e., a Settlement website created to provide information about the Settlement, including the Full Notice; (iii) by Mail Notice for those Class Members whose email notices are returned as

undeliverable; and (iv) by press release[.]").  See also *Tennille v. W. Union Co.*, 785 F.3d 422, 440 (10th Cir. 2015) *cert. denied sub nom. Dorsey v. Tennille*, 136 S. Ct. 835, 193 L. Ed. 2d 719 (2016) and *cert. denied sub nom. Nelson v. Tennille*, 136 S. Ct. 835, 193 L. Ed. 2d 719 (2016) (combined e-mail and mail notice satisfy Rule 23(c)); *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 351 (N.D. Ill. 2010) (same).

The Parties propose that any Class Member who desires to be excluded from the class send a written request for exclusion to the class administrator with a postmark date no later than thirty days before the Final Approval hearing. The administrator shall provide a list of the names of each Class Member who submitted a timely exclusion to Class Counsel after the deadline passes, and the parties shall include a copy of the list along with the Motion for Final Approval of Class Action Settlement. Any Class Member who submits a valid and timely request for exclusion shall not be bound by the terms of this Agreement. Further, any Class Member who desires to enter an appearance in this case may do so.  This opt-out right would properly not be necessary for a Rule 23(b)(2) settlement – and is thus further indication of the strength of the proffered settlement.

The Class Members also have the opportunity to object to the proposed settlement. Any Class Member who intends to object to the fairness of this settlement must file a written objection with the Court after the Notice is mailed to the Class Members, and provide a copy to Class Counsel and counsel for Defendant. The class members will be notified that they may enter an appearance through an attorney at their own expense if the member so desires.

The proposed notice is appropriate and complies with both Rule 23(c)(2)(B) and (e)(1). The notice contains all of the required Rule 23 information and properly advises the Class Members of their rights. The proposed method for notifying the Class Members thus satisfies

both Rule 23 and due process and constitutes the best notice practicable under the circumstances.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant the consent motion and enter the Preliminary Approval Order:

(1) preliminarily approving a proposed class settlement;

(2) scheduling a fairness hearing;

(3) certifying the Settlement Class for purposes of the proposed class settlement;

(4) appointing Class Counsel; and

(5) approving the form and manner of notice proposed to be sent to all members of the

Settlement Class.

<div style="margin-left:40%;">

Respectfully submitted,
**PLAINTIFFS,**
*individually and on behalf of all*
*others similarly situated*

By: _____/s/_____
Leonard A. Bennett, VSB No. 37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 930-3662
Email: lenbennett@clalegal.com
Email: srotkis@clalegal.com

</div>

Matthew J. Erausquin, VSB No. 65434
Casey S. Nash, VSB No. 84261
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:    (703) 273-7770
Fax:    (888) 892-3512
Email:  matt@clalegal.com
Email:  casey@clalegal.com

Susan M. Rotkis, VSB No. 40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel:    (757) 930-3660
Fax:    (757) 930-3662
Email: srotkis@clalegal.com

James A. Francis, *pro hac vice*
David A. Searles, *pro hac vice*
Francis & Mailman PC
Land Title Building
100 S Broad Street, 19th Floor
Philadelphia, PA 19110
Tel: (215) 735-8600
Fax: (215) 940-8000
Email: jfrancis@consumerlawfirm.com
Email: dsearles@consumerlawfirm.com

Kristi C. Kelly
Andrew J. Guzzo
Kelly & Crandall PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
Tel: (703) 424-7570
Fax: (703) 591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com

*Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of April, 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John W. Montgomery, Jr.
JOHN W. MONTGOMERY, JR. ATTORNEY, PLC
2116 Dabney Road, Suite A-1
Richmond, Virginia 23230
Tel: (804) 355-8744
Fax: (804) 355-8748
Email: jmontgomery@jwm-law.com

Phyllis B. Sumner. *pro hac vice*
King & Spalding
1180 Peachtree St NE
Atlanta, GA 30309-3521
Tel: (404) 572-4799
Fax: (404) 572-5100
Email: psumner@kslaw.com

*Counsel for the Defendant*

<div style="text-align:right">

_____/s/_____
Leonard A. Bennett, VSB No. 37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel:     (757) 930-3660
Fax:     (757) 930-3662
Email:  lenbennett@clalegal.com

</div>