UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

**JAMES JENKINS,** *et al.*,

    **Plaintiffs,**

v.                                                                              Civil Action No: 3:15-cv-443

**EQUIFAX INFORMATION SERVICES, LLC,**

    **Defendant.**

### PLAINTIFFS' RESPONSES TO CLASS MEMBER OBJECTIONS

Plaintiffs submit this brief responding to the specific points raised by the objectors in this case. For the reasons that follow, the Court should conclude the objections are meritless and overrule them.

**I.**     **INTRODUCTION.**

Out of a Settlement Class of 3.3 million, only seven members have objected to the proposed Settlement.[1] Expressed as a percentage of members, that number—.000002—is less than one-one-hundred-thousandth of a percent of Class Members. It is beyond infinitesimal. Courts have held that such minute numbers of objectors signals classwide approval of the settlement's terms and thus supports a finding of adequacy. *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 474 (W.D. Va. 2011) ("Finally, that there are relatively few objections (59 out of 3,025,689 class

---

[1] Two objections/requests for exclusion received after the deadline for submission (Docs. 56, 57) have been subsequently withdrawn by those Class Members. Class counsel spoke with both potential objectors, Mr. Robinson and Ms. Blackman. Mr. Robinson (Doc. 56) confirmed in writing he wanted to withdraw his objection and be included in the settlement. Class Counsel provided his email address to the Settlement Administrator to insure he would receive the credit monitoring service. Ms. Blackman (Doc. 57) indicated she would withdraw her objection and instead wants to be excluded from the settlement. Class counsel has also provided this exclusion request to the Settlement Administrator.

members) and only a small percentage of class members (0.04%) opting out, supports the adequacy of the settlement."). Still, the objections raise points that should be addressed so that the Court has an ample record by which to make its final fairness decision.

Despite the protestations of a few, the Settlement remains an excellent result for Class Members. It provides them valuable injunctive relief, which is arguably unobtainable under the FCRA without a settlement, and further provides 18 months of free credit monitoring by Equifax. And Class Members do not release any claims for individual, actual damages under the FCRA. Objectors argue that the Settlement is unfair because, among other things, it does not provide them with cash relief, deadlines for objecting were too short, and attorneys' fees are excessive. When viewed against the relief obtained and the number of arduous steps it took for dogged Class Counsel to get to this point, the Court should conclude that none of the Objectors have identified flaws in the Settlement that warrant overturning it.

## II. ARGUMENT AND AUTHORITIES.

### A. The Objection Of Sean M. Donahue. [Docs. 46–51][2]

Lodging several challenges to the Settlement, Mr. Donahue's principal complaint is that it is difficult for Class Members to learn of their right to object. (Doc. 46 at 1–2.) By his estimation, the phone assistance program, settlement website, and notice forms could have better informed Class Members of their rights, as he only learned of his right to object through diligence. (*Id.* at 2–3.) In addition, he claims that the due date for objections came too soon after he received the notice, he cannot benefit from the Settlement's credit monitoring feature because he "no longer has credit," and that Class Counsel is being unduly compensated for its work. (*Id.* at 4–5.) In exchange

---

[2] Mr. Donahue's objection seeks relief in multiple categories within the same document, and the Clerk has assigned each request for relief a different Docket Entry in the CM/ECF system, from 46 to 51. For simplicity, Plaintiffs will refer to Document 46 only.

for withdrawing his objection, Mr. Donahue will accept $100,000. (*Id.* at 6.) He also requests that he be paid the $.90 supposedly due each Class Member because the value of the Equifax Gold Credit monitoring is actually $269.10, not the $270 value stated in the Notice, and that Class Members all be paid $270 in cash. (*Id.*) If the Court is not inclined to award him $100,000, Mr. Donahue will accept $50,000 and an elevation of his status to that of Named Plaintiff. (*Id.*)[3]

Mr. Donahue also asks that the Court: (1) allow an additional 365 days for objections and to implement his proposed sanctions against Class and Defense Counsel; (2) require that Counsel pay for a stenographic transcription of the telephonic messages played for Class Members; (3) permit him to attend the Fairness Hearing by conference call or, alternatively, order Class and Defense Counsel to pay for his travel expenses and outfit him from head-to-toe—including "two full business suits, with all necessary ties, shirts, cufflinks, undergarments, shoes, socks, belt, belt buckle, tie pin or clip and watch from the Brooks Brothers nearest to his home"—so that he may appear at the Fairness Hearing live. (*Id.* at 7–10.) Finally, he requests *pro se* attorneys' fees of $5,000 for filing his objection, to be paid by Equifax. (*Id.* at 10.)

Though Class Counsel does not make the accusation lightly, Mr. Donahue has made his intention clear from the beginning—he hopes to shake-down Class Counsel and/or Equifax for cash in exchange for dropping his objection. In a September 21 email that he wrote and attached to his Objection, Mr. Donahue asked of Counsel for Equifax "[w]ould you be willing to send me a cash check for $2,000 in exchange for my not objecting to the class settlement?" (Doc. 46-5.) That same day, he emailed Leonard Bennett, Class Counsel, and inflated his demand to $100,000.

---

[3] Mr. Donahue also requests, among other things, sanctions against Class Counsel for what he perceives is "ineffectiveness in representing the best interest of the Class Members," including that they be removed from the case and forced to pay for a subsequent notice to Class Members that includes a to-be-returned form with a checklist of suggested objections. (Doc. 46 at 7–8.) Plaintiffs address that Motion in a separate Opposition Brief. (Doc. 58.)

3

(*Id.* ("I feel that it would be appropriate for me to receive an amount of case [sic] not less than $100,000. . . . Alternatively [to his filing an objection], please send me a check for $100,000 or instruct the Defendant to do so.").) That theme continues in the body of his Objection, where he explains to the Court that he "is willing to accept $100,000 cash from the Class Counsel or Defendant in exchange for withdrawing his objection." (Doc. 46 at 6.) Viewing this attempt at extortion in the appropriate light should cause the Court to overrule Mr. Donahue's Objection immediately and without further consideration.

Even should the Court analyze the merits of Mr. Donahue's Objections, it will find his arguments meritless. While he complains of what he believes is an arduous process for lodging objections to the Settlement, even his second Exhibit shows that the Settlement Website informs Class Members of the "**Objection Deadline**" at the very top of the page under the "**Dates and Deadlines**" bold heading. (Doc. 46-2 at 2.) Mr. Donahue's own filing belies his claim that Class Members are not adequately informed of their right to object.

More fundamentally, however, Mr. Donahue fails to describe any unreasonableness or unfairness at all, instead alluding to the fact that he would rather have cash than the credit-monitoring benefit that is provided. But, as the Court is undoubtedly aware, that is not how objections and class action settlements work. Settlements are compromises, meaning they are not a complete victory for either side. *Clayton v. Knight Transp.*, No. 1:11-cv-00735-SAB, 2013 WL 5877213, at *5 (E.D. Cal. Oct. 30, 2013) ("The very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'") (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 623–24 (9th Cir. 1982)); *Swift v. Direct Buy, Inc.*, No. 2:11-CV-401-TLS, 2013 WL 5770633, at *8 (N.D. Ind. Oct. 24, 2013) ("A settlement will not be rejected solely because it does not provide a complete victory to the

plaintiffs.") (citing *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985)). Class Counsel negotiated a groundbreaking settlement that provides practice changes likely unobtainable except by the agreement of Equifax,[4] where Equifax would prefer to do nothing and pay nothing. The fact that non-cash relief is provided, in exchange for a release of only class claims (and preserving all actual damages), is no basis for rejecting the Settlement. Rather, these facts confirm that the Settlement is fair, reasonable, and adequate.

Furthermore, Mr. Donahue proposes to rewrite the Settlement and pay all Class Members the $270 value of the credit-monitoring award, hitting Equifax with at least a potential $810,000,000 bill for the more than three million Class Members. For a claim for which Plaintiffs admit is difficult to assign monetary value (Doc. 30 at 4–5), there is simply no way that Equifax would agree to pay nearly a billion dollars to settle them. That Mr. Donahue suggests that the Court could simply order this outcome confirms his misunderstanding of the settlement process altogether and unreasonableness of his positions.

It is also important to remember that Class Members are not giving up *any* individual claims under the FCRA in the Settlement. Thus, consumers with provable damages for Equifax's failure to identify the true sources of its public-record information may sue Equifax over those damages, or any others they may have under the FCRA, tomorrow if they so choose. In exchange for the credit-monitoring benefit and practice changes Equifax will implement, Class Members only give up the right to pursue another class action over this same conduct. (Doc. 30 at 7.) In light of the relief attained against the low value of the claims and arguable inability for private litigants

---

[4] There is authority for the argument that private litigants cannot obtain injunctive relief under the FCRA. *See Peterson v. Am. Express*, No. CV-14-02056-PHX-GMS, 2016 WL 1158881, at *10 (D. Ariz. Mar. 23, 2016) (collecting cases).

to obtain injunctive relief under the FCRA, the Settlement remains an excellent result for Class Members. Mr. Donahue does not show otherwise.

**B.      The Objections Of Mary Lynn Cords, Edna Reed, And Daniel Rubin [Docs. 45, 52, 42.]**

Ms. Cords, Ms. Reed, and Mr. Rubin all object to the Settlement as unfair because there is no cash option available and the credit monitoring relief does not benefit them personally. (Docs. 45, 52, 42.) That fact, however, does not mean that the Settlement is in any way unfair, unreasonable, or inadequate. The injunctive relief and practice changes address exactly the conduct that Plaintiffs challenged in their Complaint and, although Counsel was unable to negotiate a cash component for Class Members because of the difficulties of proof and the size of the Class, they preserved all actual damage claims for Class Members. (Doc. 30 at 7.) That Class Members would rather have a cash award is not an indication that the Settlement is unfair. And this is particularly true given that Class Members do not release *any* claims for actual damages. Class Counsel contacted each of these objectors, leaving a voice message for each of them. Class Counsel only heard back from Mr. Rubin (Doc. 42), who thought the Settlement should include punitive damages. He did not want to preclude other class members from obtaining the credit monitoring service of the settlement and said not to worry about his objection.

Additionally, but of greater importance, is that the result these Class Members seek, as explained above, is unattainable. Equifax would never settle these claims for $330 million (the low-end of the $100 to $1,000 damages range times 3.3 million Class Members), and Class Members give up very little in exchange for the massive practice changes achieved. These individuals present no genuine basis for overturning the Settlement.

**C.     The Objection Of Kelly L. Roosa [Doc. 43.]**

Ms. Roosa's objection is not directed at the terms of the Settlement at all, but instead at the credit reporting industry in general. She has a bankruptcy in her past, and is upset with a mortgage transaction that apparently caused her financial hardship. (Doc. 43 at 1.) While Plaintiffs certainly sympathize with consumers who ultimately choose bankruptcy in the wake of financial difficulties, this Settlement, and the claims made in this case, have nothing to do with bankruptcy at all. The Settlement is certainly designed to provide more transparency in credit reporting, but it is not focused on or designed to resolve the difficulties that befell Ms. Roosa. And to the extent that her problems stem from Equifax's misreporting of information in her reports, the Settlement does not limit Ms. Roosa's ability to sue Equifax individually for her damages even if she remains a member of the Class. In short, her objection is misdirected and identifies no basis for the Court to reject the Settlement.

**D.     The Objection Of Adam Bezer [Doc. 53.]**

Mr. Bezer asserts several complaints about the Settlement and proposed award of attorneys' fees, including that the fees are excessive in comparison to Class Counsel's lodestar, Class Counsel should have done additional discovery to enhance the Class's settlement position, the credit-monitoring and practice-change benefits are worth little, the Settlement Agreement prevents Class Counsel from publicizing it, the Settlement Agreement restricts the ability of members to opt-out and object, and the deadlines in the Court's Preliminary Approval Order are unreasonably short and prevented him from hiring counsel.[5] (Doc. 53 at 2–7.) He would like the

---

[5] Additionally, Mr. Bezer presses arguments that are not directed to the merits of the Settlement or show a plain misunderstanding of the Settlement Agreement. As to the former, Mr. Bezer asserts claims of clumsiness on the part of Class Counsel because on sentence in their filings refers to Experian rather than Equifax, arguing that such an error weakens the Class's legal arguments. (Doc. 53 at 2.) Such a position borders on the absurd, and warrants no additional response. On the

7

Fairness Hearing continued for six months, and Class Counsel to receive only $250,000 in attorneys' fees and costs.

None of Mr. Bezer's complaints signal inadequacy or unreasonableness in the Settlement. Instead, they reflect a misunderstanding of the Settlement's terms, the conduct of the litigation, and the nature of the attorneys' fee award Class Counsel will request. Regarding the supposed excessiveness of attorneys' fees when compared to Counsel's lodestar, that information has not yet been submitted, so there is no concrete basis for Mr. Bezer's complaint of excessiveness. Class Counsel will certainly make the necessary showing of the appropriateness of the requested fee, but Mr. Bezer's speculation and unsupported arguments are no bases on which to criticize it now, nor will they be after Class Counsel submits its fee request.

Moreover, Mr. Bezer argues that the fee must be based on the approximate value of the settlement benefits for which Class Members submit claims (Doc. 53 at 2), but that position suffers from two problems: (1) there is no claims process, only the requirement that Class Members activate their credit monitoring benefit; and (2) comparing attorneys' fees against the value of the benefit to Class Members as an estimate of the fee's reasonableness is only appropriate when the requested fee is a percentage of the common-fund benefit conferred on the class. *See Brown v. Transurban USA, Inc.*, No. 1:15CV494(JCC/MSN), 2016 WL 5462714, at *11 (E.D. Va. Sept. 29, 2016) (noting this trend, and deciding fees based on lodestar because there was no common fund

---

latter point, he argues that the Settlement Agreement designates the "parties" as having certain roles in the settlement process and arguably will receive $5,000 service awards each, but he is a "party" and was not consulted on any of these points and will not receive cash. (*Id.* at 6.) This is of course inaccurate, as the Agreement clearly defines "Parties" as the Named Plaintiffs and Equifax. (Doc. 30-1 at 1.) To expect all 3.3 million Class Members to weigh-in on the contents of settlement paperwork, as Mr. Bezer suggests, would be completely unworkable, as would a settlement that provides 3.3 million Class Members $5,000 each (an eye-watering total of $16.5 billion).

in the case); *see also Berry v. Schulman*, 807 F.3d 600, 617 (4th Cir. 2015), *cert. denied*, *Schulman v. LexisNexis Risk & Info. Analytics Grp.*, 2016 WL 2962583 (U.S. Oct. 3, 2016) (affirming award of attorneys' fees, based on lodestar calculation, for injunctive relief portion of settlement). This fee is not. Mr. Bezer's complaint that attorneys' fees be tied to claim redemption is simply unfounded.

But even considering the attorneys' fees in relation to the redemption rate of Class Members shows it is reasonable. The Settlement Administrator has confirmed that 69,000 Class Members have taken steps to update their email addresses to accept the activation codes for the credit-monitoring services, which translates to a total value of $18,567,900 that will pass to Class Members after final approval. Class Counsel's requested fee of $2,800,000 represents a mere 15.08% of that total, which assumes that only these Class Members will accept the benefit. This figure falls well below the accepted award range of between 25 and 33 1/3% of the value of a settlement fund created for class members. *See In re LandAmerica 1031 Exch. Servs., Inc. I.R.S. 1031 Tax Deferred Exch. Litig.*, MDL 2054, 2012 WL 5430841, at *4 (D.S.C. Nov. 7, 2012) (noting that the 25% requested fee "falls at the low end of the average range of fees awarded in common fund class actions"); *Deem v. Ames True Temper, Inc.*, No. 6:10-cv-01339, 2013 WL 2285972, at *6 (S.D. W. Va. May 23, 2013) (awarding 33 1/3% of the settlement fund); *In re Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming award of 36% of $3.5 million settlement fund); *Gwozdzinnsky v. Sandler Assoc.*, No. 97-7314, 1998 WL 50368, 159 F.3d 1346 (2d Cir. 1998) (unpublished) (affirming district court's award of 25% of $1 million common fund); *In re Educ. Testing Serv.*, 447 F. Supp. 2d 612, 631 (E.D. La. 2006) (concluding the customary fee award for class actions "is between 22% and 27%"); *In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 WL 2109499, at *1 (E.D. Mich. June 27, 2006) (awarding fee of 28.5% of $28 million

9

settlement fund); *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) (awarding 25% of $80 million settlement fund); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (granting attorneys' fees in amount of 33 1/3% of $1.5 million settlement fund); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding 33.3% of $3.8 million settlement fund); *Kidrick v. ABC Television & Appliance Rental*, No. 3:97cv69, 1999 WL 1027050, at *1–2 (N.D. W. Va. May 12, 1999) (awarding 30.6% of approximately $400,000 settlement fund, noting that "[a]n award of fees in the range of 30% of the fund has been held to be reasonable. . . . Fees as high as 50% of the fund have been awarded.") (internal citations omitted).[6] The Court should have little difficulty overruling Mr. Bezer's objection on this point.

The supposed shortcomings in the Settlement itself that Mr. Bezer identifies are no grounds to overturn it. As set forth in their Preliminary Approval briefing, Plaintiffs have made a more-than adequate investigation of the claims and facts leading to the Settlement, as their Counsel began litigating this type of claim in 2007. (Doc. 30 at 2.) Over the course of four federal lawsuits, Class Counsel was finally able to attain the appropriate posture to bring these claims against Equifax and effectively litigate them to a settlement. With Class Counsel's history of litigating

---

[6] *See also Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA, 2012 WL 2370523, at *7-9 (D.S.C. June 22, 2012) ("A total fee of one-third of the class settlement for all work performed and to be performed in this case is well within the range of what is customarily awarded in settlement class actions. An award of fees in this range for work performed in the creation of a settlement fund has been held to be reasonable by many federal courts . . . . Accordingly, the Court finds that the requested percentage award in this case of one-third of the common fund for past work, future work, and future expenses is reasonable. . . ."); *Anselmo v. W. Paces Hotel Grp., LLC*, No. 9:09-cv-02466- DCN, 2012 WL 5868887, at *3 (D.S.C. Nov. 19, 2012) ("The approximate 33% for fees provided here is reasonable in light of all pertinent factors, including precedent and beneficial results obtained."); *Kidrick*, 1999 WL 1027050, at *2 (noting that use of percentage method of calculating attorneys' fees is favored in class action settlements where there is a common fund, and that awards of 30%, 35%, and even 50% have been held reasonable).

these claims—and being the only team of counsel with the capability and fortitude to see them through to this Settlement—there can be no genuine argument that Class Counsel sold out the Class with the Settlement or based it on an inadequate investigation. (*See* Doc. 30 at 24–25 (discussing factors relating to the reasonableness of the Settlement, including the work and investigation done).) The contrary is true, as set forth in Plaintiffs' Preliminary Approval briefing.

Lastly, the deadlines the Court approved in its Preliminary Approval Order are not too short. Apart from them having been established and approved by the Court, the deadlines were keyed off of the scheduling of the Fairness Hearing rather than an arbitrary date that would be unaffected if the Fairness Hearing were moved. The notices were mailed and emailed on August 29, and Class Members had until September 28 by which to make their election to object or exclude themselves. Even though there was a mix of conventional and electronic mail (where delivery of email is nearly instantaneous), Class Members had 30 days from the date of mailing to decide whether to exclude themselves or object. That is an objectively ample amount of time, as multiple Circuit-level courts have concluded:

> Courts have consistently held that 30 to 60 days between the mailing (or other dissemination) of class notice and the last date to object or opt out, coupled with a few more weeks between the close of objections and the settlement hearing, affords class members an adequate opportunity to evaluate and, if desired, take action concerning a proposed settlement.

*Greco v. Ginn Dev. Co., LLC*, 635 F. App'x 628, 634 (11th Cir. 2015) (quoting 2 MCLAUGHLIN ON CLASS ACTIONS § 6:18 (11th ed.), which in turn cites cases from Fifth, Seventh, Eighth, Ninth, and Tenth Circuits approving of objection periods as short as 19 days). The schedule in this case is precisely the one the *Greco* court found appropriate—there were 30 days from mailing by which to object, and four weeks between that deadline and the Final Fairness Hearing. Other than the complaints of Mr. Bezer and Mr. Sweeney (discussed below), there is no reason to expect that

additional time would be necessary or the schedule as implemented hindered anyone's ability to object.[7]

In sum, Mr. Bezer articulates no genuine basis for the Court to reconsider its Preliminary Approval Order or upend the Settlement.

**E.     The Objection Of Professional Objector Patrick S. Sweeney [Doc. 55]**

Patrick Sweeney is a nationally recognized professional, or serial, objector.[8] Courts are of course wise to and loathe the practice, noting that such individuals' "'sole purpose is to obtain a fee by objecting to whatever aspects of the [s]ettlement they can latch onto.'" *In re Polyurethane Foam Antitrust Litig.*, __ F. Supp. 3d __, No. 1:10 MD 2196, 2016 WL 1452005, at *2 (N.D. Ohio Apr. 13, 2016) (quoting *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 n.30 (S.D. Fla. 2011), alterations in original). "The serial objector's ultimate goal is extortion." *Id.*; *see In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) ("[P]rofessional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients.").

Courts across the country have recognized Mr. Sweeney's less-than-laudable role in class actions, excoriating him for his meritless objections—often made in cases in which he is not even a class member—including in two orders issued in separate cases *the same day* last year:

- *Spann v. J.C. Penney Corp.*, No. SACV120215FMOKESX, 2016 WL 5844606, at *10, n.11 (C.D. Cal. Sept. 30, 2016) (noting that "Mr. Sweeney is so prolific in objecting to class action settlements" that he filed an objection in *Spann* that belonged to a different case and, in both that mistaken objection and his *Spann* objection, Mr. Sweeney "set forth facts unrelated to either case";

---

[7] Class Counsel customarily deals with all objections in their cases, timely filed or not. Put differently, Class Counsel addresses objections on their merits, and does not merely dismiss them out-of-hand because they may be untimely. If there are any late objections, Class Counsel will give them the appropriate attention.

[8] (https://www.serialobjector.com/persons/115.)

- *In re Yahoo Mail Litig.*, No. 13-CV-4980-LHK, 2016 WL 4474612, at *7–8 (N.D. Cal. Aug. 25, 2016) (describing Mr. Sweeney's objections, made in a case where he could not show he was a class member, as "lack[ing] merit" and "misguided," and noting that "discovery reveals that Sweeney is a serial objector. During Sweeney's deposition, Sweeney revealed that he had objected in 25 federal cases across the country. Many courts have found Sweeney's objections to be meritless," with one finding they were "not . . . true");

- *In re Carrier IQ, Inc., Consumer Privacy Litig.*, No. 12-MD-02330-EMC, 2016 WL 4474366, at *5 n.4 (N.D. Cal. Aug. 25, 2016) (remarking that "Mr. Sweeney is a serial objector," and citing *Roberts* and *Larsen* (discussed below) as well as record evidence showing "that Mr. Sweeney 'has filed at least seven objections – not including his objection here – to class action settlements in the last year alone'; adding that one of his objections 'has led to a motion for sanctions against [him] alleging that his objection is frivolous and harassing because he is not a class member and does not have standing to object'");

- *In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Collection Practices Act (FDCPA) Litig.*, No. 2:13-MD-2426-DBH, 2016 WL 543137, at *6 (D. Me. Feb. 10, 2016) (overruling objections made in a case where Mr. Sweeney again was not a class member, and remarking that his "listed objections are without merit and appear to be a form document, . . . that he has filed in other class action settlements");

- *Roberts v. Electrolux Home Prod., Inc.*, No. CV13-2339-CAS VBKX, 2014 WL 4568632, at *12–13 (C.D. Cal. Sept. 11, 2014), *appeal dismissed* (Oct. 16, 2014), *appeal dismissed* (Oct. 27, 2014) ("The Court has considered the objections of Mr. Sweeney, overrules them in their entirety, finds that they are not made for the purpose of benefitting the Class, and finds that they are meritless in all respects. . . . [T]he fact that Mr. Palmer's client [Mr. Sweeney] is also a serial objector in class action matters raises additional issues as to the legitimacy of the objection. . . . The Court finds that Mr. Sweeney's claims that the Settlement is 'valueless' are without merit and consist of nothing more than unsupported attorney argument that contradicts the evidence presented to this Court.");

- *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *7 n.4 (N.D. Cal. July 11, 2014) (overruling objections made by Mr. Sweeney, his wife, and daughter, and noting that "attorney Patrick Sweeney also has a long history of representing objectors in class action proceedings").

Like the other Objectors, professional objector Sweeney asserts supposed infirmities with the Settlement which, on their face, are not. His points are also largely repetitive of arguments addressed previously, and he claims that: (1) a portion of Class Counsel's fee should be withheld until the credit-monitoring process is complete as an assurance that the Settlement is carried out;

13

(2) (a) there is no ability to talk to an actual person at the phone number to the Settlement Administrator and (b) the notice period "is far too short to allow sufficient notification to potential class members"; (3) attorneys' fees do not depend on the "number of class members discovered"; (4) the Settlement is unfair because Class Counsel receives fees and the Class no cash; (5) there was insufficient work and discovery done in the case to justify settling when it did; and (6) the fee request is inadequately supported.[9] (Doc. 55 at 2–4.)

Mr. Sweeney's only original arguments, (1), (2)(a), (3), and (4) serve as no basis for a finding of inadequacy or unfairness. As to the claim of lack of oversight, courts traditionally retain continuing jurisdiction over class actions after final approval to ensure that settlements are effectively administered, and this Court is no different:

> 11. **Final Approval:** The Court shall conduct a Final Fairness Hearing on September 21, 2016 at 701 East Broad Street, Richmond, VA 23219, commencing at 2:00 P.M., to review and rule upon the following issues:
>
>> (i) whether the Action, only for the purposes of the Settlement, may be maintained as a class action on behalf of the Settlement Class . . . (xiii) *retain jurisdiction of all matter relating to the modification, interpretation, administration, implementation, effectuation, and enforcement of this Agreement and the Settlement*.

(Doc. 30 at 6–7 (second emphasis added).) But the Court will not be alone in assuring that the Class Members are looked-after, as Class Counsel has already committed in its Preliminary Approval briefing to—as it always does—being involved in the implementation of the Settlement:

> A class of millions will pose tremendous resource and logistical burdens on each of the firms involved. The typical FCRA class settlement approved in the Court with a class size of 100,000 to 200,000 imposes thousands of employee and attorney hours *after* Final Approval. The present counsel team has always provided their contact information to the class and has represented each class member as their individual client. If the class member needs or wants to speak with an attorney, they get to do so. In this case, there will be millions of class members.

---

[9] And as all professional objectors do, Mr. Sweeney adopts and joins in the unspecified, but supposedly well-founded, objections of others. (Doc. 55 at 4.)

(Doc. 30 at 12 (emphasis in original).) Apart from his own cynicism, Mr. Sweeney has no basis at all for his argument that Class Counsel's fees must be retained to avoid abandonment of the Class once Final Approval is granted.

Similarly, the inability to talk to a live person at the Settlement Administrator's telephone helpline is no ground for a finding of inadequacy. Mr. Sweeney, an attorney licensed in Wisconsin,[10] cites no authority for this novel complaint (or any of his objections) but, nonetheless, the Court should reject it because Class Counsel placed its own contact information, including telephone number, on the Class Notice posted on the Settlement website and on the Frequently Asked Questions tab of that same website.[11] Class Members, should they choose, have ample opportunity to speak with a live person—a lawyer who represents their interests in the case.[12] Mr. Sweeney makes no argument that this process is insufficient. Indeed, he makes no statement at all as to why the Settlement Administrator's lack of a live operator makes the Settlement unreasonable, inadequate, or unfair. The Court should therefore reject this argument.

There is likewise no true heft to Mr. Sweeney's argument that attorneys' fees should have some tie to the number of Class Members who accept their benefits, assuming that is what he means by suggesting that fees be proportionate to the number of Class Members "discovered." (Doc. 55 at 3.) As explained above, this approach is only potentially relevant to attorneys' fee awards as a percentage of a common fund for a claims-made settlement but, even if the Court did consider it, the fee is eminently reasonable because thousands of Class Members have accepted

---

[10] (http://www.wisbar.org/directories/pages/lawyerprofile.aspx?Memberid=1020435, last visited Oct. 6, 2016.)

[11] (*See* https://eclaim.kccllc.net/caclaimforms/eqj/Documents/EQJ_NOT.pdf; https://eclaim.kccllc.net/caclaimforms/eqj/Faqs.aspx#q9, last visited Oct. 6, 2016.)

[12] Class Counsel has taken thousands of calls from Class Members in their respective offices, confirming that Class Members who wanted to speak with a live person were able to.

the credit monitoring benefit. Class Counsel will, as it must, support the requested attorneys' fee under the binding authority from the Fourth Circuit and this Court.

Finally, the fact that Class Counsel receives attorneys' fees and the Class injunctive relief and credit monitoring does not signal inadequacy. As set forth throughout this Brief and Plaintiffs' Preliminary and Final Approval papers, the Settlement is the best that could be negotiated against tough defenses and for claims that are difficult to monetize. Coupled with the fact that a huge class would mean hundreds of millions of dollars at stake for Equifax (and the attendant unlikelihood it would settle at those numbers), the Settlement accomplishes the aim of this lawsuit and those brought by Class Counsel in the past. In return, Class Members get a valuable service and give up *no claims* for their individual damages under the FCRA. The Settlement is fair, reasonable, and adequate, and the fact that Class Counsel will be paid for its work does not show otherwise.

### III. CONCLUSION.

None of the Objectors have shown a genuine reason for the Court to conclude the Settlement is inadequate, unreasonable, or unfair. The number of Objectors is truly miniscule, and the substance of their objections does not point the Court to a genuine reason to rethink its Preliminary Approval Order. The Court should conclude that the Settlement remains fair, reasonable, and adequate, and should overrule all objections and finally approve the Settlement.

                                                                              /s/
Leonard A. Bennett, VSB #37523
Susan M. Rotkis, VSB #40693
Craig C. Marchiando, VSB #89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
E-mail: lenbennett@clalegal.com

        Matthew J. Erausquin, VSB #65434
        Casey S. Nash, VSB #84261
        **CONSUMER LITIGATION ASSOCIATES, P.C.**
        1800 Diagonal Road, Suite 600
        Alexandria, VA 22314
        Tel: (703) 273-7770
        Fax: (888) 892-3512
        Email: matt@clalegal.com
        Email: casey@clalegal.com

        James A. Francis, (*pro hac vice*)
        David A. Searles, (*pro hac vice*)
        **FRANCIS & MAILMAN PC**
        Land Title Building
        100 S Broad Street, 19th Floor
        Philadelphia, PA 19110
        Tel: (215) 735-8600
        Fax: (215) 940-8000
        Email: jfrancis@consumerlawfirm.com
        Email: dsearles@consumerlawfirm.com

        Kristi C. Kelly
        Andrew J. Guzzo
        **KELLY & CRANDALL PLC**
        4084 University Drive, Suite 202A
        Fairfax, VA 22030
        Tel: (703) 424-7570
        Fax: (703) 591-0167
        Email: kkelly@kellyandcrandall.com
        Email: aguzzo@kellyandcrandall.com

        ***Counsel for Plaintiffs***

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of October 2016, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification to all Counsel of Record.

                                          /s/
                              Leonard A. Bennett, VSB #37523
                              **CONSUMER LITIGATION ASSOCIATES, P.C.**
                              763 J. Clyde Morris Blvd., Suite 1-A
                              Newport News, Virginia 23601
                              (757) 930-3660 – Telephone
                              (757) 930-3662 – Facsimile
                              E-mail: lenbennett@clalegal.com